STATE of Maine

v.

Gene V. GRAVES.

Supreme Judicial Court of Maine.

Nov. 14, 1966.

Frank G. Hickey, County Atty., Houlton, for the State.

Barnes & Barnes, by George B. Barnes, Houlton, for respondent.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, RUDMAN and DUFRESNE, JJ.

MARDEN, Justice.

On exceptions, under practice before the adoption of the Maine Rules of Criminal Procedure.

The respondent was charged in November of 1964 by indictment containing two counts, the first alleging indecent liberties and the second, one of the forms of sodomy. Upon trial in April of 1965, within the evidence presented was testimony that on the day in question, respondent had invited complainant, a boy of 14 years of age, into his car and during the course of travel in the car had shown the boy a pack of playing cards bearing prints of pornographic photographs, following which the alleged indecent liberties and sodomy occurred.

At trial the pack of playing cards, identified as those involved and as State's Exhibit 1, was offered as evidence and admitted over the following objection:

DEFENSE COUNSEL: "I object because they are immaterial to the issue in this case that charges indecent liberties, and they may, the possession of such cards may in and of itself may constitute a separate crime within the meaning of our laws, and if they are permitted to be entered in this case they are of such a nature and having examined now for the first time, they would be inflammatory and prejudicial to the issue being tried here, and therefore they should not be admitted.

"THE COURT: May I see State's Exhibit 1?"

DEFENSE COUNSEL: "And for the record, if Your Honor please, I should state that there is pending in this Court an appeal on a misdemeanor charging possession of this particular deck of cards.

"THE COURT: State's Exhibit No. 1 is admitted, and your exception is noted."

Following verdict of guilty on both counts, respondent moved that the verdict be set aside and a new trial granted, based upon the usual grounds, together with a contention that the admission in evidence of State's Exhibit 1 "was error, in law." To the denial of this motion, exceptions were taken.

The bill of exceptions condenses respondent's reservations relative to Exhibit 1 into claim of error upon two grounds, "namely:

1) As a foundation for the admissibility of this exhibit the State offered proof that the exhibit was displayed by defendant to its prosecuting witness, a minor, and this constituted a separate and distinct crime, complaint and warrant therefor being pending on the same criminal docket, and

2) The exhibit was irrelevant and of such a nature as to be highly prejudicial and inflammatory."

His "exceptions" to the denial of a new trial are confined to the usual grounds that the verdict 1) was against the law, 2) against the evidence, and 3) against the weight of the evidence.

Rule 10 of the Criminal Rules, then in effect,[1] provided " * * * No exceptions lie to the denial of a motion for a new trial in any criminal case, and no appeal may be taken from such denial except in a felony case." 155 Me. 646. The exceptions recorded purport to include a reservation upon the denial of the motion for a new trial but the docket entries in the case, which entries have been made a part of the record, carry a notation of "Appeal" following the "Motion (for new trial) denied" and we accept the case as properly before us on that point. The present charge involves a felony.

In briefing his case to this court, respondent makes additional attack upon the admission of Exhibit 1, upon the ground that Exhibit 1 was unlawfully obtained, and therefore inadmissible.

Our review of this case must be confined to the exceptions by which it came to us. It has been said many times, the following cases being representative of many, that the specific grounds of the exceptions must be stated in the trial court so that the presiding Justice and the opposition may be apprised of the issue upon which the presiding Justice is required to rule "and all objections not thus specifically stated, should be held to be waived." Wright, Admr., v. Bubar, 151 Me. 85, 87, 115 A.2d 722, 723. See also Martin, Appellant, 133 Me. 422, 425, 179 A. 655, and State v. Turner, 126 Me. 376, 377, 138 A. 562.

The practice for which the cases cited above stand, was reflected in Rule 8 of the then Criminal Rules (155 Me. 642) which states, at page 645:

"Objections to the admission or exclusion of evidence must be noted at the time the ruling is made or regarded as waived. * * *"

"It is well settled that a question not raised at the trial will not be considered on exceptions." Bixler v. Wright, 116 Me. 133, 134, 100 A. 467, 468; Auburn Sewerage District v. Whitehouse, 128 Me. 160, 163, 146 A. 80.

"A ground of exception not stated in the trial court cannot be stated on appeal." Moore, Appellant, 113 Me. 195, 199, 93 A. 180, 182. The word "appeal" is here used in a broad sense.

It is granted that this rule is not without exception as appears in Thompson v. Franckus, 150 Me. 196, 107 A.2d 485, and State v. Hudon, 142 Me. 337, 52 A.2d 520, in which on appeal "exceptions" not reserved have been considered by this court "as a matter of grace, but not as a matter of

---

[1]. Maine Criminal Rules effective December 1, 1959 (155 Me. 642). Our present Maine Rules of Criminal Procedure became effective December 1, 1965.

right." Thompson, supra, 150 Me. at page 203, 107 A.2d at p. 489. This has been done where this court felt from the record that there had been highly prejudicial errors *of law* well calculated to result in injustice.

This record does not permit us to reach that conclusion. Had the trial court been faced with objections to the admission of State's Exhibit 1 founded upon the contention that the exhibit came to the possession of the arresting officer through unlawful search and seizure, the record would have been developed to supply a basis upon which the trial court would have ruled and which this court could review. No record was made covering that point, and from which it can be determined that errors of law were made to bring the case within the exception recognized in *Franckus,* supra, and *Hudon,* supra. We are confined to a consideration of the case within the terms of the bill of exceptions.

■ Respondent's appeal to the denial of his motion for a new trial must be overruled. Apart from the question of the admissibility of State's Exhibit 1 into evidence, the jury was faced with the usual conflicting testimony, the weight and credibility of which was for it to determine.

■ The exceptions aimed directly at State's Exhibit 1 will be treated in reverse order,—first as to its relevance. The bill of exceptions charges the exhibit with *irrelevance,* but the objection, at trial, charged it with *immateriality.* The terms are not necessarily synonymous. See Weinstock v. United States (1956), 97 U.S. App.D.C. 365, 231 F.2d 699 and Sinclair v. United States, 279 U.S. 263, 298, 49 S.Ct. 268, 73 L.Ed. 692. The basic test of relevance is logic. "To be 'relevant' means to relate to the issue. To be 'material' means to have probative weight, i. e., reasonably likely to influence the tribunal in making a determination required to be made." Weinstock, supra, [3], [4] 231 F.2d at page 701. Whether the use of the two words upon these different occasions

was or was not intentional, the result as applied to this case is the same.

State's Exhibit 1, by virtue of its nature, came to this court without reproduction and we have described it as a collection of prints of pornographic photographs. The description is accurately applied as the word is defined in standard dictionaries. The complainant testified with relation to this Exhibit:

"Well, on the way out he handed me a deck of cards, with pictures on it with intercourse and what not."

A glance at the exhibit makes it clear that the witness referred to sexual intercourse.

In the context of the case the presence and display of the cards to the complainant constituted the approach of the respondent to the complainant for what the jury found to have been his ultimate purpose. Pornography is defined, among other definitions, as "pictures, etc., intended to arouse sexual desire." Webster's New World Dictionary, College Edition, or "a portrayal of erotic behavior designed to cause sexual excitement" Webster's Third New International Dictionary, and the jury could well have found that State's Exhibit 1 was as effective, or more so, in making the boy susceptible to respondent's advances, than words or physical contact. The presence and display of these obscene prints was as much a part of the case as narration of sexually tittilative language or fondling of the complainant's person.

"One of the elementary rules of evidence is that matters offered in evidence must be relevant to issues of the case and tend to establish or disprove them. * * * (A)ll facts and circumstances which afford reasonable inferences or throw light upon the matter or matters contested— are admissible in evidence, unless the exclusion of any such fact or circumstance is required by some established principle of evidence, such as the hearsay evidence rule, the best evidence rule, * * *." 20 Am.Jur., Evidence § 246.

"Generally, it may be said that any legally competent evidence which, when taken alone or in connection with other evidence, affords reasonable inferences upon the matter in issue, * * *, and sheds any light upon or touches the issues in such a way as to enable the jury to draw a logical inference with respect to the principal fact in issue is relevant and admissible." 20 Am.Jur., Evidence § 247.

"* * * (I)t may be stated as a general principle that whatever to the ordinary reasoning mind is logically probative of a fact in issue is prima facie admissible, and should not be excluded unless its admission is in conflict with some principle of law or in violation of some rule of policy." Robbins v. Lewiston, Augusta and Waterville Street Railway, 107 Me. 42, 50, 77 A. 537, 540.

"Any act which constitutes a preparation for the commission of a crime is relevant and is admissible for the prosecution * * *." 20 Am.Jur., Evidence § 286; State v. Doherty (1900) 72 Vt. 381, 48 A. 658, 660.

"The determination of relevancy and materiality must necessarily rest largely in the sound discretion of the presiding justice as of the time, and under the pleadings, circumstances, and conditions when offered." Torrey v. Congress Square Hotel Co., 145 Me. 234, 241, 75 A.2d 451, 456.

"Where 'the ruling is within the discretionary power of the presiding justice and there appears no abuse of such discretion' the exception must be overruled." Torrey, supra, at page 240, 75 A.2d at page 456.

"The Court alone had the right to decide that question." (admissibility) State v. Bragg, 141 Me. 157, 163, 40 A.2d 1, 4.

■ Whether Exhibit 1 bore logically upon the offense alleged and had probative weight toward a determination of the issue was for the trial court to determine. There was no abuse of its judicial discretion.

■ Respondent's claim of jury prejudice and inflammation resulting from the admission of Exhibit 1 places the exhibit in the category of photographs dealing with death by violence or post-mortem examinations, which have frequently been subject to the same criticism. These principles involved were reviewed at length in State v. Duguay, 158 Me. 61, 62, 178 A.2d 129 and affirmed in State v. Wardwell, 158 Me. 307, 311, 183 A.2d 896. The admissibility of such an exhibit "rests upon the exercise of sound judicial discretion; that such photographs * * * are admissible when they are relevant to the issues * * * and their probative value is not outweighed by the danger of prejudice to the defendant." Wardwell, supra, at page 311, 183 A.2d at page 899.

■ The pictures which were exposed to objections in the death cases were offered in proof of the existence of the facts depicted, to portray a situation after the fact in issue, the result of the act with which the defendant is charged. It has no probative force, necessarily, in establishing that the defendant did the act. Any inflammatory effect is collateral to the issue of guilt, and hence suspect. This properly poses a preliminary balancing of the probative value versus the danger of prejudice to the respondent. A pathologist could give a verbal picture of the damaged body at autopsy, and the trial court in its discretion might require him to do so, as against the display of a gruesome photograph. It could not be candidly contended in the instant case that the complainant should not be permitted to testify as to the events leading up to the alleged act of sex perversion, such as conversation or physical contact. Evidence bearing on the "atmosphere" in which the parties found themselves, and the temporary relationship created by it, had probative force to aid the jury in its consideration of the ultimate issue. In this case the probability of

the act with which the defendant was charged was challenged by seeking to discount the accuracy of the factual narrative leading to it. This is a conventional trial approach. Had the complainant been asked to describe the playing cards shown him, he would have been called upon to express himself in revolting language and indeed the defense would doubtlessly have insisted that the cards "should speak for themselves." Absent the invocation of the "best evidence" rule, it is beyond judicial comprehension that a presiding Justice, aware of the existence of the best evidence, would permit a 14 year old boy to verbally describe the contents of such evidence as Exhibit 1 contains. This evidence, however it may have been presented, disclosed a situation before the fact, and the jury was competent to find that the display of the cards to the complainant was sufficiently near in point of time to the disputed act, to be substantially a part of it. It bore directly, not collaterally, upon the ultimate jury question. Any prejudice or inflammatory result against the defendant was no different than that resulting from evidence of a vicious battery prior to a death resulting in a charge of manslaughter or murder. The respondent takes nothing by this exception.

■ The final exception challenged the use and admissibility of State's Exhibit 1 in the light of the fact that the exhibit was the basis of another prosecution then pending. Here again the objection voiced at trial was that there was a charge pending against the respondent for possession of these cards but the bill of exceptions bases the alleged error of admission of Exhibit 1 upon the ground that the State's foundation for such offer was the display of the cards to the complainant, in itself a separate offense on which prosecution was pending. The proscription discussed earlier in this opinion confines respondent to the issue raised at trial. However, upon either premise it would be argued that a stolen firearm which was the subject of a charge of larceny against one "X" could not be used as evidence in a case charging "X" with murder by that same weapon. We find no support in reason or authority for this view.

Exceptions overruled.

Appeal denied.