**STATE of Maine**

v.

**John C. GALLOWAY.**

Supreme Judicial Court of Maine.

Oct. 31, 1968.

Ronald E. Ayotte, County Atty., T. A. Fitanides, Asst. County Atty., Alfred, for plaintiff.

Anthony McManus, Dover, N. H., and William B. Troubh, Portland, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, DUFRESNE, WEATHERBEE, JJ.

WEBBER, Justice.

This was an appeal from a conviction by jury verdict of the crime of assault with intent to rape. Defendant's points of appeal raise eight issues which will be dealt with in the order in which they are presented.

1. Denial of motion for new trial. It is not disputed that the complainant was assaulted in her trailer home by an assailant unknown to her at the time. After a struggle the complainant successfully evaded an attempted rape. Factual issues were presented for the jury with respect to the identification of the defendant as the assailant and with respect to the defendant's claim of alibi. There was substantial credible evidence which, if believed by the jury, would support the State's position on both issues. The motion was properly denied.

2. Testimony of witness Vittum. Over objection Chief of Police Vittum was permitted to relate a portion of a conversation which he had with complainant about ten minutes after the assault. The Justice below carefully restricted the witness to a narration of the description of her assailant given to him by the complainant. It is obvious that the Court deemed the conversation to have been too remote from the event to be admissible as part of the *res gestae*. The portion of complainant's declaration to the officer dealing with identification was, however, admissible under a different rule. The first witness for the prosecution had been the complainant. She had given to the jury a verbal description of her assailant and positively identified the defendant as that person. She had then been subjected to a rigorous cross-examination which

clearly had as its primary objective the impeachment of the witness with respect to identification. Stress was laid on asserted prior inconsistent statements with respect to identification. It then became proper to show through other witnesses that she had remained constant in her description of the assailant and that her testimony given on the stand was not of recent contrivance. Her statements to the witness Vittum, carefully limited by the Court as we have noted to matters of description and identification, then became admissible not for the truth of the matter asserted, but as verbal acts tending to corroborate the testimony of the complainant. The rule was clearly stated and applied in State v. King (1923) 123 Me. 256, 258, 122 A. 578, 579. The Court said, "The weight of authority also seems to support the rule that where the prosecutrix has taken the stand and her testimony has been impeached, evidence of the details of her prior statement of what occurred may be received in corroboration of her testimony given on the stand, but not as evidence of the facts stated." In State v. Bragg (1944) 141 Me. 157, 161, 40 A.2d 1, 3, the opinion states, "It is, of course, well settled that * * * if the prosecutrix takes the stand her testimony may be corroborated by proof that she made a complaint through the testimony of the person to whom it was made *but the details of the complaint are not admissible unless her testimony has been impeached* or the complaint is within the rule of *res gestae.*" (Emphasis supplied) There was no error.

3. Testimony of witness Baston. Presents the same issue as #2 above and is governed by the same rule.

■ 4. On two occasions reference was made to the fact that defendant had been physically present in the Dover (N. H.) District Court. No point was properly saved for review. In any event the references were rendered completely innocuous by the disclosure of Officer Baston on cross-examination that the defendant voluntarily presented himself there to be returned to Maine in connection with the instant case. There was no insinuation to the jury that defendant had a prior criminal record in New Hampshire. Evidence relating to alleged admissions of the respondent with respect to an unrelated sex crime in New Hampshire was considered by the Presiding Justice in the absence of the jury and by his ruling excluded.

■ 5. Admission of State's Exhibit #7. Over objection this exhibit, a jacket worn by defendant, was admitted into evidence. Before the complainant knew the identity of her assailant and before the defendant was apprehended, the complainant gave a description of the clothing her assailant was wearing which included an accurate description of Exhibit #7. When first shown the exhibit before trial she characterized it as "identical" to the one her assailant had worn. At trial she testified that the jacket was "similar" to the one so worn. The jacket then became a proper item of circumstantial evidence to be weighed by the jury in determining the crucial issue of identification. Alone the evidence could not convict, but it had probative value as tending to corroborate the positive identification made by the complainant when she first saw the defendant and at trial.

■ 6. This point is stated in the points of appeal in these terms: "The Court erred in accepting, over Defendant's objection, certain testimony as to identification of the Defendant by the Complainant." Without more, the Court is unable to find in the record the testimony said to have been admitted over objection. The positive identification in the courtroom, made *without objection,* came in this manner:

"Q. And can you tell us who did this to you?

A. (By the prosecutrix) I can now, yes. I know who.

Q. Do you see him in the courtroom here?

A. Right there."

The record shows that the witness pointed to the defendant. The entire testimony consumes 141 pages of the record and the reviewing Court can hardly be expected to find unidentified error without any indication as to its location. Where neither the briefs nor the points of appeal inform the Court either by quotation from or reference to the record, the point must be treated as waived.

7. "The Court erred in not granting a mistrial upon (the complainant's) testimony that the Defendant had been picked up by the Dover Police." During direct examination of the complainant the following occurred:

"Q. And when was this?

A. This was in January. I don't remember the exact date, but I know he had been picked up by the Dover Police Department.

Q. No.

Mr. McManus: Your Honor, I object to that and ask that it be stricken.

The Court: It may be stricken, *and the jury will disregard the words,* 'but I know that he had been picked up by the Dover Police Department.' " (Emphasis ours)

It suffices to say that the objectionable phrase was stricken and the jury was properly instructed. Moreover, and even more importantly, no motion for mistrial was made then or later. No error is shown.

8. "The Court erred in not sufficiently instructing the jury as to the burden of proof and the presumption of innocence." The point is not saved. No objections were offered to the instructions as given and no requests were made for additional instructions with respect to these matters. We note in passing, however, that the Justice below gave general instructions at the beginning and specific instructions at the end of the trial, in the course of which he fully and correctly covered both subjects.

Although no constitutional issues were raised by the points of appeal or during the trial, the defendant's counsel has adverted in brief and argument to cases involving certain constitutional requirements with respect to identification. We have therefore carefully examined the record to ascertain whether or not the defendant has suffered any constitutional deprivation which might taint his conviction. In United States v. Wade (1967) 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, objection was seasonably offered to an in-court identification by a witness to a robbery. The witness had previously identified the defendant in a lineup at which the defendant was not represented by counsel. Pointing out the "dangers inherent in eyewitness identification" and concluding that lack of counsel precludes effective cross-examination with respect to lineup procedure, the Court found a sixth amendment violation. Nevertheless the Court recognized that the in-court identification may not have stemmed from the lineup identification but may have had an independent origin. The matter was remanded to afford the Government an opportunity to demonstrate that the in-court identification was not so colored or was in any event under all the circumstances harmless error. Substantially the same result was reached in Gilbert v. State of California (1967) 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178. However, Stovall v. Denno (1967) 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 made the holdings of Wade and Gilbert with respect to the right to counsel at a lineup or confrontation prospective. Trial in the instant case having been completed before Wade and Gilbert were decided, the rule therein announced would therefore not here be applicable. In Stovall, a federal habeas corpus proceeding, the Court was critical of "the practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup." Exam-

ining the Stovall facts to determine whether the procedure employed was so unfair as to violate due process of law, the Court reviewed "the totality of the circumstances" and determined that the showing of the petitioner to the complainant "in an immediate hospital confrontation was imperative."

In the instant case the complainant was able to give the officers a reasonably accurate description of the defendant immediately after the assault. On two occasions she was shown photographs, "at least 15 or 20" altogether, of various persons. She rejected all of these as not being photographs of her assailant. On a third occasion she was shown two photographs of the defendant and "identified them immediately." There is no suggestion that she was prompted or assisted by the officers either in her rejections or her identification. Still later she came to the Kittery police barracks at the request of the police and being stationed at a window, observed the defendant crossing the yard. He was then accompanied by either one or two other men. He does not suggest that he was wearing handcuffs or was otherwise conspicuously identifiable as a suspect as was the petitioner in Stovall. Nevertheless, and again apparently without prompting, the complainant was able to "positively identify him" as her assailant. The evidence discloses that there were no facilities for a lineup at the barracks. We conclude that the "totality of circumstances" here present was such as to negative any claim of violation of the requirements of due process of law.

In summation, the in-court identification was made without objection on behalf of the defendant; the sixth amendment principle is not retrospectively applicable; and the evidence discloses no lack of "governmental fair play" or other violation of rights vouchsafed by the fourteenth amendment.

The entry will be

Appeal denied.